Aloha to the court. Welcome to Hawaii. Thank you. I am Bradley Tam, appearing on behalf of Plaintiff Appellate. With me at council table is Lisa Schultz. Also present in the courtroom is Bankruptcy Trustee Dane Field. This is not simply a case of defendant mortgagee failing to publicly announce the postponement of a foreclosure auction. There was no public announcement, and that failure constitutes a breach of contract. This case is more importantly about the defendant mortgagee's conduct in going forward with the foreclosure sale, notwithstanding its failure to announce the postponement. This case is about the injury afflicted by a private and secret sale of the plaintiff mortgagee's valuable property. And what was the injury? Pardon me, Your Honor? What was the injury? The injury was the loss of her property. Let's assume there wasn't a proper announcement. What was the injury? And what on the record shows that there was an injury? If there was a proper announcement? What was the injury from the failure to properly announce the postponement? She lost her property at a private secret sale. She lost the advantage of having the public being able to bid on her property. This property was sold at the height of the property valuation in Hawaii. It's a $300,000 property which was sold secretly, privately, by the mortgagee to itself for less than half the value of the property. On a credit bid? On a credit bid. The breach of contract and violation of the foreclosure statute by law voids the sale. And the conduct of a private secret sale of the plaintiff's property is unfair and a deceptive trade practice for which trouble damages are mandated by the statute. Let me interrupt you again. I apologize for interrupting, but you say it was a secret sale. How do we know it was a secret sale? What do you mean by secret sale? Because the announcement was no good, but... outside of the mortgagee's internal sphere, not one single person was told about when the auction would occur. The auctioneer's representative went to postpone the auction on September 23rd, looked around, asked a couple of people who were present. And this square was filled with people who were there to buy places at foreclosure. Asked a couple of people, are you here for my foreclosure? They said no. So she didn't even bother to announce it to anyone present. Yes, but what happened then? Then they proceeded on December 2nd and sold the property without having any notice to anyone that they were going to have a foreclosure sale. The auctioneer stood up there and he said, do I have any bids? Nobody knew to come to the place. And then he made a bid on behalf of the mortgagee. I'm not saying you're wrong, but I want to make sure I understand how this happens. There was the mistake, the secretary didn't do what she should have done. Then there's another sale scheduled, right? No, the secretary was supposed to go to the square and announce that the sale would be held on December 2nd. And she didn't. She did not do that. Were there any subsequent announcements to anybody at all that there was going to be a sale on December 2nd? Not only was there not, the bankruptcy attorney asked a representative of the law firm that was handling the foreclosure about when the sale would occur. And a misrepresentation was made. The attorney told her that our firm isn't handling the foreclosure and did not provide her with the date. So then on the date in question where there was a sale, it was a credit bid sale. Yes. Again, I'm asking you, how do we know that that wasn't fair value under the circumstances? Credit bids are all right. How do we know? It's hard to say what would have happened had defendants obeyed the law. But the law of the state of Hawaii since 1937 in the Ulrich case is the burden of proof to show that the sale was fair and properly complied with in all respects rests with the mortgagee. That's the law of the state of Hawaii. Strict compliance with the foreclosure statute is set forth in Silva. It's set forth in Ulrich. And just recently in 2009, the Hawaii Supreme Court reaffirmed that in Lee. Do you agree there was substantial compliance here? Substantial compliance with? With how the announcement was? There was no compliance, no effort at compliance whatsoever. I know your position that strict compliance is required, but was there substantial compliance here? Substantial compliance would only occur if I told at least somebody when the auction was going to occur. No one was told. I thought it was my understanding that the secretary went around and asked, and correct me if I'm wrong, went around and asked and in essence found out that no one was interested in bidding on the house. Am I correct? The evidence showed that she asked some of the people who were present at the square whether they were there for her auction. She did not tell anyone that an auction was being postponed. That's not substantial compliance. That is absolute, total noncompliance. All right. So you're saying there was no substantial compliance. There was none. And you offer that there should be strict compliance. I argue in the state of Hawaii, the Hawaii Supreme Court mandates we have strict compliance. In addition to that, Your Honor, this is not a case of an executory contract in determining whether there is a material breach. All right. Where is there evidence in the record that this violation, this technical violation, reduced the bidding at the auction? Where is the evidence in the record of that? The burden of proof to show that the sale was fair and that the highest price was obtained rests with the defendant. And the defendant did not present any evidence of that. So there's no evidence in the record showing that amount or what the cost was or how that affected? Well, Your Honor, let me take you back to 1884 in the Silva case, which is shortly after the statute was enacted. The Hawaii Supreme Court was looking at a situation where an auction actually did receive public notice. People actually did show up. People actually did bid. In fact, one of the mortgagors even consented to the sale, but the Hawaii Supreme Court still voided it because there was a violation of the contractual term regarding the notice. There in Silva. Then how did the bankruptcy court come up with the amount of money that he came up with in determining the injury? We presented evidence by way of expert testimony as to the value of the property. The property was established as having a value at the time of the auction of $300,000. That's what the experts testified to. The bankruptcy court then subtracted the value of the mortgagee's claim on that date, which they found to be approximately $144,000. It's the difference between those two numbers which establishes the value of the plaintiff's injury for calculation of her unfair deceptive trade practice claim. Bear in mind that causation and damages is not an element of the breach of contract claim. Under Silva, the foreclosed mortgagor is not entitled to an award of damages for breach of contract. What they get for breach of contract is an avoidance of the sale. As the Hawaii Supreme Court stated, the sale is not merely avoidable. It is void. Now, the same thing holds under ALRIC. When a mortgagee breaches its fiduciary duties to sell the property according to the terms of the mortgage and the terms of the law, under ALRIC, they void the sale. It is only under the Unfair or Deceptive Trade Practices Act, Chapter 480, that we get into the element of damages. And there, under Davis v. Wholesale Motors, the Hawaii Supreme Court looks at the value of the property. I'm just looking at what the bankruptcy court stated here. And I believe, actually for record 63, in looking at the injury prong, the bankruptcy court said although the consumer must prove injury, in fact, in order to recover damages under Section 480-2, the test for liability is an objective one. And I think your colleagues here, representing the lenders, point out that this conflates the standard for finding a deceptive practice with the requirements for individual recovery for a deceptive practice. What's your response to that? The burden of the plaintiff in an unfair deceptive trade practice case is to establish that the act was either unfair or deceptive. This the plaintiff did. It is unfair because it violated the public policy, which is established by 667-5. And it was substantially injurious in that her $300,000 property was sold without the benefit of a public auction. She did not experience foreclosure of her home because of this imperfect procedure that took place, did she? Her property may have been sold at foreclosure had they complied with the law. I'm not sure I understand that. I mean, can you answer the question? I mean, did she experience foreclosure of her home because of the lender's imperfect postponement procedure? Yes or no? Yes or no. Well, I don't think I can answer it yes or no because I don't understand your question, Your Honor. Did she breach the terms of the mortgage? Was she delinquent in her payments? Yes. For that, we need to look Davis v. Wholesale Motors. The conduct of the plaintiff is not at issue. Davis v. Wholesale Motors, the unclean hands doctrine is not available as a defense in a Chapter 480 claim. Yes, she breached the terms of the mortgage, but you see, when a mortgageor fails to pay under the terms of the mortgage, what that gives as a remedy to the mortgagee is paragraph 22 of the mortgage, which is the power of sale statute. Then the mortgagee has to proceed with foreclosing in accordance with that power of sale provision. And, again, I just want to make sure I understand this point. The evidence in the record that this violation, this technical violation, reduced the bidding at the auction, is there any evidence in the record? Whether it's your burden or their burden, is there any evidence in the record? First of all, it's not a technical violation. The violation? It's a violation of the term of the contract. Okay. Okay. And the evidence that is in the record, we did have an expert testify that had he known of the foreclosure auction sale, he could have been present. In fact, it was his business at the time to be present and make offers and purchases on that. And that was a testimony. Well, I mean, is that in the abstract, or was he interested in this property? He was in it. Well, the way it actually worked and the way the testimony came down at trial is, I had a relationship with the plaintiff's bankruptcy attorney in Hilo. And when she had situations such as this, she would call me. I had a regular communication with Mr. Joy. I would have notified him that a foreclosure sale was going down. It looked like he had at least 50% equity to recapture in it. He would then show up and make a deal at the foreclosure auction. That was his business. That was some of the evidence that was provided. That sounds awfully speculative and conjectural. The BAP goes through this in pretty careful detail, and it says, you know, we took a look at this and we can't find anybody interested in this property at all. There was one person, nobody showed up. You know, they went around looking for anybody. We don't think that there was anybody there to bid then, so how do we know somebody would have been around to bid at the second one? Isn't that what the BAP did? The BAP is pretty good at speculating, and they did speculate. But the law of the state of Hawaii doesn't ask for speculation on their part. But the law of the state of Hawaii says. The record shows one potential bidder appeared at the first sale. No bidders, including debtor, attended any of the continued sales. There were a whole bunch of these. So nobody had been showing up. So the secretary shows up and looks around, can't find anybody, and the BAP says there's just no evidence at all that anybody was interested in this property. It is irrelevant what happened at the prior postponement. And how did they know only one person showed up at a prior postponement? Did they actually go out and poll each person who was there? They sit up and they announce a postponement. There may be somebody standing there who's there to attend that auction. They hear the postponement. They just turn around and walk away, and they come back another day. Well, what's the evidence in the record that shows that only one potential bidder appeared at the first sale and thereafter no bidders, including debtor, attended any of the continued sales? Is that right or wrong, or how do we know? There was a piece of evidence that was presented at trial, which was an attendance sheet. And on that attendance sheet they had score marks for how many people that they felt had attended in their own subjective reasoning. The point is, Your Honor, is a public sale does not depend upon what happened in the past. A public sale, the law requires that you give a public announcement today of what is going to happen tomorrow. It doesn't matter what happened yesterday. So if the Secretary, though, had stood at the flagpole and said as loud as anybody could want her to say, hear it for miles, this sale is not going to occur today, we're postponing it until whatever the date was, that would have been complete compliance with the statutory requirement, right? Had they complied with the statute, yes. And that's all that had to happen. They didn't have to publish or tell anybody from that. That's right. So if there is nobody there, that's what the BAP says. There was nobody there, so there's no injury. The BAP said there was nobody there at the time she left, which is 25 minutes after the time that the announcement was supposed to be made. The evidence of trial showed that the square was occupied by many people who were there to attend a foreclosure at 12 noon. Now, if I go to make the announcement and I wait until everybody leaves and then I make the announcement, I'm not in compliance with the contract. I'm not in compliance with the statute. I have deprived the owner of the property of that announcement, which the law mandates must be made at 12 noon, because that's what the contract says. The law 667-5 says you have to comply with the contract. The contract says the announcement is to be made at the date and time published. Thank you very much. Thank you, Your Honor. Good morning. May it please the Court. My name is Paul Alston. I'm here on behalf of AmeriQuest with my associate, Tina Coleman. The evidence in the record about what happened at the prior postponements is found, Your Honor, at page A456 of the record. It is Exhibit 2017. It is, as Mr. Tam described it, a worksheet that reflects that the postponement on September 23rd was the fifth postponement. The first sale was set for May 23rd. According to the records, no one showed up. The second was on June 17th. According to the record, one person showed up and was interested. The third was on August 26th. No one showed up. September 2nd, no one showed up. Is this in the excerpt of the record? Yes, Your Honor, it is. What's the excerpt say? A456, I believe. A456? Yes. And so what we have is a circumstance where, as Mr. Tam admits, consistent with Hawaii law, the announcement of what was going to happen on September 23rd was made on September 2nd. No one was there to hear it. No one was interested at that time. What do we do with the counterfeit declaration? Anything? You know, it is certainly regrettable, but at best. It was regrettable, too. Indeed it was. Indeed it was. I mean, I think that, frankly, that is something that should be taken up by disciplinary authorities, but it is not something, I submit, that could not have been addressed by Ms. Keiko Oha or her counsel in both the ejectment action in state court, which, of course, she never bothered to respond to, or with the disciplinary authorities, the disciplinary counsel. The ejectment action, is that still pending? The ejectment appeal is still pending. The court has taken it under advisement. It has not heard argument. It simply said, tell us when the Ninth Circuit has decided. So they're waiting for us. Apparently so. Apparently so. But we're going to wait for them. Okay. Well, you know, we had raised earlier an issue about the Rooker-Feldman doctrine and the fact that there was a state ruling, but the BAP rejected that argument and we don't choose to pursue it here. What I'd like to do, if I could, Your Honor, is address three issues that are raised by the appellant and then a couple of additional issues that are raised by our cross-appeal to the BAP, which was deemed moot, but if you agree with the appellant's arguments, are ripe for decision. And you need not reach those later arguments, of course, if you affirm the BAP here. First, you know, the question is whether there was an unfair and deceptive practice at all. What the Hawaii case law teaches, and it's found in two cases, one is Keiko'oha versus Hawaii Community Federal Credit Union decided by the Hawaii Supreme Court, and the other one is a case called Riopta decided by the Hawaii Federal District Court, is that statutory violations by themselves are not violations of the unfair deceptive trade practice statute, but you have to, in addition, find that the conduct was unfair and deceptive, and as the Federal District Court said, with an emphasis on the reprehensibility of the defendant's conduct. Here we have a situation where a secretary made what the bankruptcy judge found was an error, despite the fact that she was trying to do the right thing. So we have a technical violation. What standard of review should be applied onto the bankruptcy court's finding of a defective practices trade? I think that basically the facts are undisputed. What happened at the plaza on September 23rd is not in doubt. Therefore, what you're left with is a mixed question of law and fact, where the facts are undisputed, and so you're faced with simply a question of the application of the law to those undisputed facts. It's not a matter of the bankruptcy judge having decided any credibility issues, and so therefore we submit that it's a de novo review, because really the only issue before you is a question of law. On these facts, on these undisputed facts, was there a deceptive practice? And so the Keika and Riopta cases teach that you have to focus on the reprehensibility or the wrongful motives and intentions of the actor. And here, when the judge has found that the secretary was trying to do the right thing, and when she would have... So judges found which judges? Judge Ferris, the bankruptcy judge. BAPs don't find facts. No, I didn't say that. No, the bankruptcy judge, Judge Ferris, in this court. It's in conclusion of law 11, I believe, of his findings of fact and conclusions of law. He says the secretary was trying to do the right thing. Did she sign the false declaration? She did. That sounds kind of strange to say. It's not reprehensible. I mean, you put the two together to me. She doesn't do what she's supposed to do. The bankruptcy judge made that as a factual finding, but never made an open oral announcement to all those present. Right. And then you add that she signs the phony declaration, and I don't care what she says about it now, she signed it. Does that make it more reprehensible or reprehensible? Well, it doesn't make what happened on the plaza reprehensible. It may make her subsequent conduct. I have a hard time cutting the two in half. I mean, she doesn't do what she's supposed to do, then she signs a phony declaration. It seems to me it's all one package. Don't we look at the reprehensibility in terms of everything that's involved? Well, yes. I think one could look at it that way. I suggest that the theory on which the case was tried and the ruling made by the bankruptcy judge was focused on the events at the plaza, not on the subsequent false declaration, which clearly should never have been submitted. There's no doubt about it. It should never have been acted upon. Well, the other overlay to this is that once you have made a proper announcement, there doesn't have to be anything else done. I mean, doesn't that underscore the extreme importance of complying with the statute? Because there don't have to be any further announcements. And so look what's happening. You're taking property away and there's a lot of money involved in something like this. It sure seems to me that you better do what you're supposed to do. Or I submit that perhaps there should be a do-over if you fail to do it. I mean, that's what the appellant says SILVA requires, absolute strict compliance. Right. But that theory falls, I submit, when the announcement would have been to an empty plaza. Well, it could have, should have. We're not sure of that. Did she talk to absolutely everybody there? No, definitely she did not. No. So how do we know that there wasn't somebody standing there, you know, looking at a tree, waiting for this thing to go down? We don't know that. Well, we do know that the prior announcement on September 2nd, there's no dispute about whether the prior announcements or the prior postponements were properly conducted. We do know that on that time there was nobody there. But that doesn't mean that there necessarily wouldn't have been anybody there. That's the problem I have with the BAP. They say, well, there wasn't anybody there before, so there's nobody there now. It doesn't seem to follow. Right. But it is entirely speculative as to whether if there had been someone there, if they had been interested in bidding. You know, the only way out of this is to make people do what they're supposed to do. Fair enough. That's the problem. And we're opening the door to all kinds of sloppy practices here by putting our arms around something like this. Right. But then what does that lead to? What it leads to is a do-over. It's a catastrophe. It leads to cases in the appellate courts in Hawaii. It leads to this. It leads to all of this stuff. Right. And from the standpoint of the consumer or the homeowner, I submit that what it leads to is a do-over. That is, there will be another auction at another time at which bids can be taken. So you're saying we're going to start again. I think that could be the only remedy because that's what Silva teaches is that if the sale was void, you do it again. Doesn't that sort of assume that the property values and the economy and everything else has to be the same? I mean, if the economy tanks, okay, we're going to do it over again. Now a house is worth $10 where it used to be worth $1,000 or $400,000 where it used to be $1,000. I don't see how you can have a do-over and put that humpty-dumpty back together given the economy and the way it changes. But by the same token, remembering that this was in December 2008 after the collapse of the financial markets, I submit that it made no sense for Judge Ferris to take the opinion of an appraiser about what the fair market value would have been in an arm's-length transaction after appropriate marketing and so on and so forth and say that that is what the court could determine would have been the result at a foreclosure auction where you have the exact opposite of an arm's-length fair market transaction. And so with respect to the calculation of damages, I submit that there is no evidence from which the amount awarded by the court could be determined. And related to that, that goes back then to the question of whether the bankruptcy court properly awarded triple damages in the form of, quote, lost equity plus two times that lost equity, when in fact the debtor, if the sale had been properly conducted or if a new sale is conducted, is not faced with having any damage at all if the sale is done over. So in any event, the first point is that given the factual findings and conclusions by the judge, that the Secretary was trying to do the right thing. What we're faced with is a circumstance where there was a mistake and perhaps a statutory violation, but not a violation that rises to a UDEP. The second point is the question of causation, which we've discussed. The Supreme Court's decision in I v. Frank Huff, which is cited on our brief at page 29, says it's not enough to prove a violation. You have to, in fact, prove that the violation caused the financial damage that the claimant seeks to recover. And here, there is simply a failure in trying to establish causation because of the failure to establish that there was somebody who was, in fact, interested in this property who would have bid and would have bid more than the creditor. We're beginning to beat that dead horse, but the BAP says the record shows no consumers were present. I don't think the record does show that because we don't know whether, because by not having talked to everybody, we can't know that. But we do know that there was another auction being conducted at the same time, that the Secretary talked to a number of the people who were present and it appeared that they might have some interest in her auction. Boy, is that weak. Appeared that they might have. Now we're really speculating. Right, but that's what she did. I mean, that's what she testified to. And then when that other auction was concluded, everybody left. If someone was there for her auction, obviously, they would not have left when the other auction was concluded, especially when she was standing there not as a bidder but to conduct some other business. So 25 minutes after the appointed time, nobody was there but the Secretary? That's correct. And she left. And she left. Now, let me just talk briefly about the appellant's reading of the Silva and Ulrich decisions. In both of those cases, there is far more than a technical violation, a failure to announce a postponement. In both of those cases, there is evidence of harm, which animated the court, the Hawaii courts, to set aside the sales. None of those cases have any bearing on the UDAP claim, but they could be read, as the appellant says, to say that if there's not strict compliance, then there has to be a do-over. Well, if that's what this court decides, then there will be another sale. But the fact is that the court, the bankruptcy court, in the event of another sale, would then be in a position to assess whether after the results of that sale are known, whether the changes in the economy or anything else would affect the alleged injury or would help calculate the alleged injury suffered by the homeowner. But it is certainly not appropriate to look at what a fair market sale might have achieved when there was no pressure to sell, as compared to what was the result of a forced sale at a foreclosure auction by someone who, by all the evidence, was consistently and repeatedly in default and made no efforts to try to salvage her property, either before or after the sale was conducted. Let me, if I could, just turn briefly to the two issues presented by the cross-appeal or the appeal we made to the BAP, which was denied as moot. There we raised two issues that I think are right for decision if you determine that the BAP should be overturned on the appellant's claims. The first is the issue of attorneys' fees with respect to all aspects of the case. We attempted to offer evidence of a settlement, which would have set aside the auction and done it again. The bankruptcy court rejected that, saying it was barred by Rule 408. We cited the Lowman case from the Third Circuit, which establishes that such evidence can be considered. Last year, this court, in a case called Ingram v. Erugian. Did you want to wrap up? I do. I just wanted to see if I could just give you the site of this case. Is this in the briefs? It is not. The briefs were written two and a half years ago. This case was just decided last year. Did you advise the other side you were going to be citing this case? I did, Your Honor. It's Erugian at 647 F. 3rd, 925. Hold on a second. 647 F. 3rd? 925. 925. Right. And there, this court explicitly adopted the Third Circuit case that says evidence of settlement offers is relevant in calculating fees. Okay. And so that evidence should not have been rejected by the court. Thank you, Your Honor. Thank you. To answer the question as to whether we were advised of the citation, yes, we were about three minutes before you called our case. So we haven't had a chance to review it. Three-minute rule. It's like if you pick something off the ground fast enough, you got it. Touchdown. All right. Now, one question was asked, what is the standard of review here? In Hawaii, whether an act is unfair or deceptive is a factual question, and that's Balthazar versus Verizon, 109 Hawaii at 72, and Kukui Nuts at 7 Hawaii up, 612. Now, once you've determined that it's a factual question, then you have to go to the clearly erroneous review of factual findings. And a finding of the trial court can't be erroneous, even if the appellate court would have ruled differently, as long as the trial court's decision is plausible under the circumstances. And that is the key. And all the evidence has to be interpreted in the manner which is most favorable to the prevailing party. Also, I quickly want to address Apelli's request for a do-over. Well, great, a do-over from a sale that was supposed to occur in 2006 when the property values were at their peak to a sale in 2012 where the property values have lost at least 50% of their value. Right now, we're at the slump, and big island properties or properties on the island of Hawaii where this is located are in the total lowest they could possibly be. A do-over is not a remedy. That's why the law allows for these actions such as unfair trade practice. Now, I would point out to the court that subsequent to the trial, the Hawaii legislature amended the statutes, the foreclosure statutes, and now provides at HRS 657-60 that a violation of the foreclosure statute is per se an unfair deceptive trade practice. Yeah, but that's not before us, is it? That's not before you, but it is an indication of how this State leans in these matters. We had to prove unfair or deceptive. It's not and deceptive. It's unfair or deceptive. We had to prove it at trial. But today, if a plaintiff comes forward, they show a violation of the statute, it is per se an unfair deceptive trade practice. That goes to Mr. Alston's statement that just a mere violation of the statute doesn't give rise to an unfair deceptive trade practice. It did when we went to trial, and now it's a per se issue. Now, briefly, if we agree with you, what happens? If you agree with me, then the judgment is entered. The property is reconveyed to the debtor. And by the way, the judgment is reduced by the amount of the reconveyance. The debtor then either has to cure that default, which it is her intention to cure the default and retain the property, or the property would go forward and be sold at foreclosure by the mortgagee. It's been a long, hard road, six years. And I propose that the bankruptcy court's findings are plausible, and therefore, under the standard of review, this court has to affirm that decision. Thank you, Your Honor. Thank you. Thank you, both sides, for your argument here today.
judges: Goodwin, Trott, Murguia